**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

DRAHCIR PARSON,

                Plaintiff,

      v.                                              No. 16-CV-167
                                                         (DNH/CFH)

NATHAN YORK, Sheriff, Warren
County; et al.,

                Defendants.

---

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

**APPEARANCES:**                            **OF COUNSEL:**

DRAHCIR PARSON
Plaintiff pro se
917 Altamont Ave.
Schenectady, New York 12303

Lemire, Johnson Law Firm                GREGG T. JOHNSON, ESQ.
P.O. Box 2485                                APRIL J. LAWS, ESQ.
2534 Route 9
Malta, New York 12020
Attorneys for Defendant Nathan York

Hon. Eric T. Schneiderman               MARK G. MITCHELL, ESQ.
Attorney General for the                  Assistant Attorney General
    State of New York
The Capitol
Albany, New York 12224-0341
Attorney for Defendants Anthony J.
Annucci and Christopher Miller

**REPORT-RECOMMENDATION AND ORDER**[1]

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Plaintiff pro se Drahcir Parson ("Parson"), who at the relevant time in question was in custody at the Warren County Jail ("Warren C.J."), and later at Great Meadow Correctional Facility ("Great Meadow C.F."), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants Nathan York ("York"), Anthony J. Annucci ("Annucci"), and Christopher Miller ("Miller"), violated his rights under the Fourteenth Amendment. See Dkt. No. 18 ("Am. Compl."). Presently pending is a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) submitted by defendant York, and a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) submitted by defendants Annucci and Miller. Dkt. Nos. 19, 27. Parson submitted a response in opposition to each motion. Dkt. Nos. 25, 29. Defendant York submitted a reply. Dkt. No. 26. Defendants Annucci and Miller also submitted a reply. Dkt. No. 30. For the following reasons, it is recommended that defendant York's motion to dismiss be granted, and that defendant' Annucci and Miller's motion to dismiss be granted in part and denied in part.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are reviewed in the light most favorable to Parson as the non-moving party. See subsection II(A) infra.

Parson was "illegally transferred" to Great Meadow C.F. from Warren C.J. on December 8, 2014. Am. Compl. at 2. This transfer occurred prior to the signing of a substitute jail order, which was signed on January 29, 2015. Id. Upon his transfer to Great Meadow C.F., Parson was immediately placed in administrative segregation (or Special

Housing Unit, "SHU"). Id. Parson's mother passed away while he was in administrative segregation and he was not allowed to attend her funeral. Id.

Parson alleges that Annucci and York applied New York State regulations "in an arbitrary and capricious fashion" in facilitating Parson's transfer from Warren C.J. to Great Meadow C.F. Compl. at 3. Parson also claims that his transfer was not to exceed thirty days, but Annucci "rubber stamped" multiple thirty day extensions. Id.

Parson also alleges that, once he was transferred to Great Meadow C.F., he was confined in the SHU for twenty-six days without a hearing, and without notice of charges against him. Compl. at 4. He claims that Miller did not conduct a "meaningful review" of his SHU confinement, which is required every sixty days. Id. Parson was also placed under a seven-day shield order, that was renewed twice for a total of twenty-one days. Id. During this time, he was denied hot water and cleaning supplies. Id.

## II. Discussion

### A. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), a defendant may move to dismiss a complaint for a plaintiff's "failure to state a claim upon which relief can be granted." When considering such a motion, a court must "construe plaintiff['s] complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiff['s] favor." Selevan v. N.Y. Thruway Auth., 584 F.3d 82, 88 (2d Cir. 2009) (quoting Holmes v. Grubman, 568 F.3d 326, 335 (2d Cir. 2009)) (internal quotation marks omitted). However, this "tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009)) (internal quotation marks and alterations omitted).

Accordingly, to survive a motion to dismiss, a complaint must state a claim for relief that is "'plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (explaining that the plausibility test "does not impose a probability requirement . . . it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct].")); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (holding that "[o]n a motion to dismiss, courts require enough facts to state a claim to relief that is plausible . . . .") (internal citations omitted). Determining whether plausibility exists is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations or arguments that the submissions themselves do not suggest that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191–92 (2d Cir. 2008) ("On occasions too numerous to

count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally." (internal citations omitted)).

### B. Personal Involvement

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). Thus, supervisory officials may not be held liable merely because they held a position of authority. Id.; Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). However, supervisory personnel may be considered "personally involved" if:

> (1) the defendant participated directly in the alleged constitutional violation;
>
> (2) the defendant, after being informed of the violation through report or appeal, failed to remedy the wrong;
>
> (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom;
>
> (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or
>
> (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (additional citation omitted)).[2] Assertions of personal involvement that are

---

[2] Various courts in the Second Circuit have postulated how, if at all, the Iqbal decision has affected the five Colon factors which were traditionally used to determine personal involvement. Pearce v. Estate of Longo, 766 F. Supp. 2d 367, 376 (N.D.N.Y. 2011), rev'd in part on other grounds sub nom., Pearce v.

merely speculative are insufficient to establish a triable issue of fact.  See e.g., Brown v. Artus, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009).  Defendants allege that they were not personally involved in the alleged constitutional violations.

Parson contends that defendants Annucci and York facilitated Parson's transfer from Warren C.J. to Great Meadow C.F. without due process.  Am. Compl. at 3.  The Court finds that Parson has alleged sufficient personal involvement in the transfer for both Annucci and York.  Parson has submitted with his complaint documents that show communication between Annucci and York meant to facilitate his transfer.  See Dkt. No. 18-1 at 5-6, 12.  The complaint also includes letters from Annucci to York pertaining to Parson's continued incarceration at Great Meadow C.F.  See id. at 13-17.  Thus, Parson has alleged sufficient personal involvement of both Annucci and York at this stage in the proceedings.  See Thomas v. Ashcroft, 470 F.3d 491, 497 (2d Cir. 2006) (finding sufficient personal involvement where prison officials "ordered or acquiesced in [the plaintiff's] transfer").

As to defendant Miller, Parson alleges that Miller placed him in administrative segregation upon his transfer to Great Meadow C.F. and subjected him to unconstitutional conditions of confinement.  Am. Compl. at 4.  Although Parson clearly alleges that Miller placed him in administrative segregation, Parson does not identify any defendant that subjected him to unconstitutional conditions of confinement, namely a cell shield order, lack of hot water, and lack of cleaning supplies.  See Am Compl. at 4.  As such, the Court recommends that the unconstitutional conditions of confinement claims be dismissed as to

---

Labella, 473 F. App'x 16 (2d Cir. 2012) (recognizing that several district courts in the Second Circuit have debated Iqbal's impact on the five Colon factors); Kleehammer v. Monroe Cnty., 743 F. Supp. 2d 175, 185 (W.D.N.Y. 2010) (holding that "[o]nly the first and part of the third Colon categories pass Iqbal's muster . . . ."); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (disagreeing that Iqbal eliminated Colon's personal involvement standard).

Miller for lack of personal involvement. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (dismissing unconstitutional conditions of confinement claims against prison officials where there were no "direct" or "indirect allegations sufficient to permit an inference the [prison officials] had acted or failed to act in any of the ways that would subject [them] to personal liability for the deprivations alleged by [the plaintiff]").

The Court reaches a different conclusion in regard to Parson's claim against Miller regarding his initial and continued placement in administrative segregation. Parson alleges that Miller placed him in administrative segregation, and continued that placement, without due process. See Am. Compl. at 4. Miller simply disputes Parson's allegation of personal involvement. See Dkt. No. 27-1 at 7-8. Thus, at this early stage, Parson has alleged sufficient personal involvement on the part of Miller. See Smart v. Goord, 441 F. Supp. 2d 631, 643-44 (S.D.N.Y. 2003) (declining to dismiss claims against superintendent where the plaintiff alleged that superintendent failed to release her from segregation).

Accordingly, it is recommended that defendant Miller's motion be granted as to Parson's unconstitutional conditions of confinement claim,[3] and denied as to Parson's administrative segregation claim. It is further recommended that defendant Annucci and York's motion be denied as to Parson's transfer claim.

### C. Fourteenth Amendment

#### 1. Due Process

---

[3] Because the Court finds that Miller was not personally involved in Parson's unconstitutional conditions of confinement claim, the Court need not determine whether Parson has stated a claim as to his allegedly unconstitutional conditions of confinement.

The Due Process Clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property without due process of law." U.S. CONST. Amend. XIV § 1. It is important to emphasize that due process "does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished without due process of the law." Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (internal quotation and citations omitted). "A liberty interest may arise from the Constitution itself, ... or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted).

As a pretrial detainee, Parson's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty[; thus,] restrictions on pretrial detainees . . . may not amount to punishment . . . ." Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir.2001) (citations and internal quotation marks omitted). Unlike convicted prisoners, who must satisfy the standard of "atypical and significant hardship" outlined in Sandin v. Conner, 515 U.S. 472 (1995), a pretrial detainee need not meet such a stringent standard because "[a] detainee's interest in freedom from unjustified infliction of pain and injury is more substantial ...." Id. at 188–90; see also Iqbal v. Hasty, 490 F.3d 143, 146 (2d Cir. 2007), rev'd on other grounds, Ashcroft v. Iqbal, 556 U.S. 662 (2009) ("Th[e Second Circuit] has said that Sandin does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process.").

### a. Procedural Due Process

-8-

To state a claim for procedural due process, there must first be a liberty interest which requires protection. See generally Valmonte v. Bane, 18 F.3d 992, 998 (2d Cir.1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "Aside from any state policy or regulation, the force of the Due Process Clause itself protects pre-trial detainees from restrictive confinement." Shine v. Hofmnn, No. 06–CV–237, 2009 WL 2179969, at *5 (D. Vt. July 22, 2009) (citing Kentucky Dep't of Corr., 490 U.S. at 459–60).

As previously discussed, the Second Circuit has determined that pretrial detainees may not be subjecting to punishment prior to an adjudication of guilt. Benjamin, 264 F.3d at 188 (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). In determining whether a restriction is punitive, a court may consider

> whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable ... and whether it appears excessive in relation to the alternative purpose assigned ....

Bell, 441 U.S. at 537–38 (quoting Kennedy v. Mendoza–Martinez, 372 U.S. 144, 168–69 (1963)).

> Absent a showing of an expressed intent to punish, the determination whether a condition is imposed for a legitimate

-9-

> purpose or for the purpose of punishment generally will turn on whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. Thus, if a particular condition or restriction of pretrial detention is reasonably related to legitimate governmental objective, it does not, without more, amount to punishment. Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees....

Id. at 538–39 (internal quotation marks and alterations and citations omitted); see also Benjamin, 264 F.3d at 188.

### i. Administrative Segregation Placement

Parson claims that Miller placed him in administrative segregation following his transfer to Great Meadow C.F. on December 8, 2014. He remained in the SHU for twenty-six days until he received a "notice of recommendation," and did not receive a hearing or "procedural protections." Compl. at 2, 4. He was confined in the SHU for eight months while at Great Meadow C.F. Id. at 2.

Where a pretrial detainee's detention in segregation is punitive, rather than administrative, it is governed by the standard set forth in Wolff v. McDonnell, 418 U.S. 539 (1974), "which requires written notice of the charges at least twenty-four hours before any hearing, a written statement of factual allegations against the inmate, and at least a limited ability to present witnesses and evidence." Taylor v. Santana, No. 05 Civ. 1860(AKH), 2007 WL 737485, at *4 (S.D.N.Y. Mar. 6, 2007) (citing Benjamin v. Fraser, 264 F.3d 175, 190 (2d Cir. 2001)) (additional citation omitted). Where the pretrial detainee's detention in segregation is administrative, the confinement is assessed pursuant to the standard set

-10-

forth in Hewitt v. Helms, 459 U.S. 460 (1983), which states that the detainee "must 'merely receive some notice of the charges against him and an opportunity to present his views' to the prison official charged with deciding whether to impose the restraint." Id. (citing Benjamin, 264 F.3d at 190) (additional citation omitted). Under Hewitt, prison officials may afford the detainee process "within a reasonable time" after the imposition of administrative segregation. Id. (citing Hewitt, 459 U.S. at 476 n.8).

Here, there is no dispute that Parson's placement in the SHU at Great Meadow C.F. was administrative, rather than punitive. Parson makes no allegation that defendants placed him in segregation to punish him, and states in the amended complaint that he was placed in "administrative segregation." See Am. Compl. at 2. Additionally, the exhibits attached to the amended complaint include an "administrative segregation hearing determination" which states that, due to Parson's "assaultive and disruptive behavior," he is being placed in administrative segregation "for the safety of staff and for the . . . order of the facility." Id. at 18. Thus, the Court must determine if Parson's complaint gives rise to a liberty interest cognizable under the Fourteenth Amendment.

Courts in this district have determined that "administrative classifications of pretrial detainees, even where the classifications come with restrictive conditions, do not give rise to a liberty interest, absent evidence of an intent to punish." Valdez v. City of New York, No. 11 Civ. 05194(PAC)(DF), 2013 WL 8642169, at *8 (S.D.N.Y. Sept. 3, 2013) (collecting cases). For example, placement of a pretrial detainee in maximum security housing due to his possible escape status did not give rise to a liberty interest in Adams v. Galleta, No. 96 CIV. 3750(JGK), 1999 WL 959368, at *4 (S.D.N.Y. Oct. 19, 1999). In that case, "the 'particular condition or restriction of pretrial detention is reasonably related to a legitimate

governmental objective.'" Id. (citing Bell v. Wolfish, 441 U.S. 520, 539 (1979)). Although Adams was decided on a motion for summary judgment, "a due-process challenge to a detainee's administrative classification may also be dismissed under Rule 12(b)(6), where the plaintiff has alleged no intent to punish and no consequences of the classification that could be considered punitive in nature." Valdez, 2013 WL 8642169, at *8. Thus, Parson's initial placement in administrative segregation does not trigger a protected liberty interest.

Although Parson does not allege intent to punish on the part of defendants, "[at] some point . . . the administrative necessity for involuntary lock-up begins to pale." Covino v. Vermont Dep't of Corrs., 933 F.2d 128, 130 (2d Cir. 1991). Indeed, the Second Circuit found in Covino that a nine-month administrative segregation "smacks of punishment." Id. Here, Parson complains that he was placed in administrative segregation for eight months while at Great Meadow C.F. Am. Compl. at 2. Although the documents attached to Parson's complaint indicate the reasons why he was initially placed in administrative segregation, there is nothing on the record that shows why he remained there for eight months. See Dkt. No. 18-1 at 18. Thus, the Court finds that Parson's due process claim regarding his placement in administrative segregation cannot be dismissed at this stage. See DeLeon v. Rockland Cty. Corr. Facility, No. 10 Civ. 7536(PGG), 2013 WL 1195623, at *3 (S.D.N.Y. Mar. 22, 2013) (denying summary judgment where pretrial detainee was kept in solitary confinement for seven months). The reasons for Parson's initial placement in the SHU at Great Meadow C.F. are compelling. See Dkt. No. 18-1 at 18 (outlining Parson's history of exposing staff to fecal matter and urine, spitting at staff, and other assaultive and disruptive behavior while housed at Warren C.J.). However, absent any indication from Parson or defendants that Parson's assaultive and disruptive behavior continued for eight

months, necessitating administrative segregation for that entire time, the Court finds it inappropriate to dismiss these claims at this juncture, as the continued segregation could "amount[] to 'punishment' in the constitutional sense." Bell, 441 U.S. at 537.

Accordingly, it is recommended that defendants' motion on this ground be denied.

### ii. Transfer from Warren C.J. to Great Meadow C.F.

Parson claims that he was denied due process when Annucci and Miller facilitated his transfer from Warren C.J. to Great Meadow C.F. Am. Compl. at 3. Parson further argues that Annucci and Miller violated New York Correctional Law § 504.2 in transferring Parson from Warren C.J. to Great Meadow C.F. Id.

To the extent that Parson argues that Annucci and Miller violated New York State law in facilitating his transfer, such a claim fails because "'a violation of state law neither gives [Parson] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim." Doe v. Conn. Dep't of Child and Youth Servs., 911 F.2d 868, 869 (2d Cir. 1990) (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)); see also Cimino v. Glaze, 490 F. App'x 401, 403 (2d Cir. 2013). "[S]tate statutes do not create federally protected due process entitlements to specific state-mandated procedures." Holcomb v. Lykens, 337 F.3d 217, 224 (2d Cir. 2003).

Parson also fails to state a due process claim regarding his transfer from Warren C.J. to Great Meadow C.F. because "the due process clause is not implicated when a pretrial detainee is transferred from one facility to another." Covino, 933 F.2d at 130 (citing Meachum v. Fano, 427 U.S. 215, 228 (1976)). Further, "the mere transfer of a pretrial detainee 'to less amenable and more restrictive quarters for nonpunitive reasons' does not

-13-

constitute punishment in violation of the Due Process Clause." Butler v. N.Y.S. Corr. Dep't, No. 94 CIV. 5054 (AGS), 1996 WL 438128, at *4 (S.D.N.Y. Aug. 2, 1996) (citing Covino, 933 F.2d at 129)) (additional citations omitted).

Here, it is clear from Parson's complaint that his initial transfer from Warren C.J. to Great Meadow C.F. was for non-punitive reasons. The letter requesting the transfer sent from York to Annucci states that York was requesting the transfer because Parson was aggressive and assaultive toward staff, and required additional precautions that Warren C.J. could not facilitate. Dkt. No. 18-1 at 5-6. Thus, the transfer alone, which was clearly facilitated for administrative reasons, does not state a claim for a due process violation. See Butler, 1996 WL 438128, at *4 ("[T]ransfer between state correctional facilities alone does not amount to "punishment" under the *Bell* standard."). More importantly, because Parson does not allege that the transfer was punitive, and actually provides the Court with ample evidence showing that the transfer was necessary for administrative reasons, the Court finds that dismissal of his claim is warranted. See McFadden v. Solfaro, Nos. 95 Civ. 1148(LBS), 95 Civ. 3790(LBS), 1998 WL 199923, at *10 (S.D.N.Y. Apr. 23, 1998) ("The record . . . indicates that [the plaintiff], due to his misconduct, caused a strain on resources at the [previous correctional facility] which permitted a transfer to another correctional facility.").

Accordingly, it is recommended that defendants' motion on this ground be granted, and that defendants Annucci and York be dismissed from this action.

### D. Res Judicata

Defendant York urges the Court to apply the doctrine of res judicata to dismiss Parson's complaint. Dkt. No. 19-1 at 14-16. York points to two cases that Parson previously filed in this District concerning events that occurred at Warren C.J. See id. at 14-16. Applying the doctrine of res judicata is, very clearly, inappropriate here. The events that occurred in Parson's two previous complaints[4] predated the events that give rise to Parson's complaint here. In fact, both actions were filed in October 2014, a full two months before Parson was transferred to Great Meadow C.F., giving rise to the events described in the instant complaint. York's only argument is that, when Parson amended his complaint in each of these actions while incarcerated at Great Meadow C.F., he did not include the claims regarding his transfer to Great Meadow C.F. or his administrative segregation at Great Meadow C.F. See Dkt. No.19-1 at 14-16. The Court finds this argument unconvincing. As explained above, Parson's claims regarding his transfer and administrative segregation were still accruing in April 2015, when York claims that he should have asserted them. Indeed, if asserted at that time, the Court may have found that they failed to state a claim. Further, in deference to Parson's pro se status, the Court finds that the doctrine of res judicata does not bar Parson's claims regarding his transfer to and incarceration at Great Meadow C.F.

### E. Eleventh Amendment Immunity

Annucci and Miller argue that they are each entitled to Eleventh Amendment immunity relating to Parson's claims against them in their official capacities. Dkt. No. 27-1

---

[4] For the sake of brevity, the Court incorporates into this decision York's description of Parson's two previous lawsuits. See Dkt. No. 19-1 at 5-10.

at 14-15.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. "[D]espite the limited terms of the Eleventh Amendment, a federal court [cannot] entertain a suit brought by a citizen against his [or her] own State. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 21 (1890)). Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. Halderman, 465 U.S. at 100. Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. See Quern v. Jordan, 440 U.S. 332, 340-41 (1979).

Moreover, suit against a state official in his or her official capacity is a suit against the entity that employs the official. Faird v. Smith, 850 F.2d 917, 921 (2d Cir. 1988) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself," rendering the latter suit for money damages barred even though asserted against the individual officer in his official capacity. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, because Parson seeks monetary damages against defendants for acts occurring within the scope of their duties, the Eleventh Amendment bar applies. However, the Court disagrees with Annucci and Miller that Parson sued them in their official capacities

only. See Dkt. No. 27-1 at 12. Although Parson lists Annucci and Miller's "official position" on his complaint, the Court, in deference to Parson's pro se status, assumes that Parson has brought suit against Annucci and Miller in both their individual capacity as well. See Thomas v. Calero, 824 F. Supp. 2d 488, 498-99 (S.D.N.Y. 2011) (rejecting defendants' argument that plaintiff sued prison officials in their official capacity only since plaintiff's allegations "appear to be intended to plead that the individual defendants were acting under color of state law, a pleading requirement for stating a claim under section 1983").

Accordingly, it is recommended that Annucci and Miller's motion on this ground be granted, to the extent that Parson asserts claims against them in their official capacities.

### F. Qualified Immunity

The doctrine of qualified immunity is an affirmative defense which "shield[s] an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." Pearson v. Callahan, 555 U.S. 223, 244 (2009). Even if a disciplinary disposition is not supported by "some evidence," prison officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Luna v. Pico, 356 F.3d 481, 490 (2d Cir. 2004) (quoting Wilson v. Layne, 526 U.S. 603, 614 (1999)) (internal quotation marks omitted). This assessment is made "'in light of the legal rules that were clearly established at the time [the official's action] was taken.'" Wilson, 526 U.S. at 614 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal quotation marks omitted); Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991). To determine whether a state official is entitled to qualified immunity for acts taken during the course of his or her

employment, a reviewing court is to determine: "'(1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the [official] to believe the conduct at issue was lawful.'" Phillips v. Wright, 553 F. App'x 16, 17 (2d Cir. 2014) (quoting Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013)).

Here, the Court finds that Parson has alleged sufficient facts to show that Miller violated his constitutional rights. It is well established that "purposeless restrictions or conditions of confinement can constitute impermissible punishment when imposed on pretrial detainees." Allah v. Milling, 982 F. Supp. 2d 172, 184 (D. Conn. 2013) (finding that prison official was not entitled to qualified immunity from liability for placing the plaintiff in administrative segregation) (citing Bell, 441 U.S. at 535)). A defendant may be found to be shielded by qualified immunity on a motion to dismiss only where "'the complaint fails to allege the violation of a clearly established right.'" Id. (quoting Williams v. Fischer, No. 02 Civ. 4558(LMM), 2003 WL 22170610, at *11 (S.D.N.Y. Sept. 18, 2003)) (citation omitted). Therefore, the Court finds that Miller is not entitled to qualified immunity at this stage in the proceedings. Because the Court finds that Parson has failed to allege a constitutional violation against Annucci or York, the undersigned finds that they are entitled to qualified immunity.

Accordingly, it is recommended that defendant Miller's motion on this ground be denied, and that defendants Annucci and York's motion on this ground be granted.

### III. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants York, Annucci, and Miller's motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) be:

1. **GRANTED** as to the Fourteenth Amendment claims regarding (1) Parson's transfer to Great Meadow C.F. against Annucci and York; and (2) unconstitutional conditions of confinement claim against Miller.

2. **DENIED** as to Parson's Fourteenth Amendment Claim against Miller regarding his eight-month placement in administrative segregation at Great Meadow C.F.; and it is further

**RECOMMENDED** that defendants Annucci and York be dismissed from this action; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); see also 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: February 28, 2017
Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge