**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

DRAHCIR PARSON,

                   Plaintiff,

         v.                            No. 9:16-CV-167
                                                 (DNH/CFH)

CHRISTOPHER MILLER,

                   Defendant.

_____

**APPEARANCES:**                         **OF COUNSEL:**

Drahcir Parson
917 Altamont Avenue
Schenectady, New York 12303
Plaintiff <u>pro</u> <u>se</u>

Attorney General for the                 MARK G. MITCHELL, ESQ.
   State of New York                    Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendant

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

       Plaintiff <u>pro</u> <u>se</u> Drahcir Parson ("plaintiff"), a former pretrial detainee who was, at all

relevant times, in the custody of the New York Department of Corrections and Community

Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

defendant Superintendent ("Supt.") Christopher Miller – who, at all relevant times, was

_____

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

employed at Great Meadow Correctional Facility ("Great Meadow") – violated his constitutional rights under the Fourteenth Amendment. Dkt. No. 18 ("Am. Compl."). Presently pending before the Court is defendant's Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 46. Plaintiff opposed that motion, and defendant filed a reply. Dkt. Nos. 51, 52. For the following reasons, it is recommended that defendant's motion be granted.

# I. Background

## A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party. See subsection II.A. infra. In 2014, plaintiff arrived at Warren County Jail as a pre-trial detainee. Am. Compl. at 2. Plaintiff contends that on December 8, 2014, Warren County Jail staff transferred him to Great Meadows. Id. The Substitute Jail Order ("SJO") allowing plaintiff's transfer was not signed until January 29, 2015, thirty days after he arrived at Great Meadows. Id. On his arrival, Great Meadows staff placed him directly in administrative segregation. Id. During this initial thirty-day period, Supt. Miller denied plaintiff's request to attend his mother's funeral. Id. Plaintiff remained in administrative segregation until he was released from prison on August 10, 2015. Id.

## B. Defendant's Recitation of the Facts

In support of this motion, Supt. Miller filed a Statement of Material Facts.[2]  In March 2014, plaintiff was arrested during a traffic stop in Warren County and charged with multiple counts of criminal possession of a controlled substance in the third degree.  Dkt. No. 46-14 ¶ 5; Dkt. No. 46-4 at 14.  On or about March 23, 2014, plaintiff entered the Warren County Jail.  Dkt. No. 46-14 ¶ 6;  Dkt. No. 46-4 at 21.  During his approximately nine-month confinement at the Warren County Jail, plaintiff acquired 199 Unusual Incident Reports as a result of his behavior, and had more than sixty disciplinary hearings for violations of facility rules.  Dkt. No. 46-14 ¶ 7; Dkt. No. 46-11 at 4.  Warren County Jail staff allege that plaintiff was aggressive, and physically and verbally abused staff members.  Dkt. No. 46-14 ¶¶ 8, 10; Dkt. No. 46-2 ("Pl. Dep.") at 38-39, 64-65; Dkt. No. 46-

---

[2] Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

3

4 at 27-46; Dkt. No. 46-8; Dkt. No. 46-9; Dkt. No. 46-11 at 4-5.  On approximately nine occasions, plaintiff slid fecal matter and urine out from under his cell.  Dkt. No. 46-14 ¶ 9; Dkt. No. 46-11 at 4; Pl. Dep. at 37-38, 63.  Plaintiff also broke two broom handles, which Warren County Jail staff accused him of keeping as weapons.  Dkt. No. 46-14 ¶ 11; Pl. Dep. at 64.  At an unspecified time, Warren County Jail staff placed a spit mask on plaintiff's face.  Dkt. No. 46-14 ¶ 12; Pl. Dep. at 65-66.

As a result of an unidentified incident that occurred on September 10, 2014 at the Warren County Jail, plaintiff was indicted on two counts of assault in the second degree and one count of obstructing governmental administration in the second degree.  Dkt. No. 46-14 ¶ 13; Pl. Dep. at 67-69 Dkt. No. 46-8.  In December 2014, the Warren County Sheriff's Office requested, pursuant to New York Correction Law § 504, that plaintiff be transferred to a DOCCS facility for the purpose of safely confining him.  Dkt. No. 46-14 ¶¶ 14, 15; Dkt. No. 46-11 at 4-5, 6.  DOCCS agreed, and plaintiff was transferred to Great Meadow on December 8, 2014.  Dkt. No. 46-14 ¶¶ 15, 17; Pl. Dep. at 70; Dkt. No. 46-11 at 4-5, 6.  The New York State Commission of Correction approved a substitute jail order, and the arrangement was ultimately extended through August 2015.  Dkt. No. 46-14 ¶ 16; Pl. Dep. at 108; Dkt. No. 46-11 at 1-3, 6-13.

On January 2, 2015, nonparty Sergeant ("Sgt.") Fraser submitted plaintiff's administrative segregation recommendation.  Dkt. No. 46-14 ¶ 24; Dkt. No. 46-4 at 4.  Plaintiff received a copy of that recommendation.  Dkt. No. 46-14 ¶ 24; Pl. Dep. at 74-75; Dkt. No. 46-4 at 2.  On January 14, 2015 and January 20, 2015, plaintiff attended an administrative segregation hearing.  Dkt. No. 46-14 ¶ 25; Ex. D; Ex. C at 2-3; Ex. A at 75-

76.    Sgt. Fraser testified at the hearing, and plaintiff questioned him as to his recommendation.  Dkt. No. 46-14 ¶ 26; Pl. Dep. at 76.  After considering Sgt. Fraser's recommendation and testimony, as well as plaintiff's disciplinary action summary, the hearing officer concluded that, "due to [plaintiff's] assaultive and disruptive behavior," he should be placed in administrative segregation "for the safety of staff and for the good order of the facility."  Dkt. No. 46-14 ¶¶ 27, 28; Dkt. No. 46-4 at 2.  Supt. Miller agreed with the hearing officer's determination that plaintiff's presence in the general population would threaten the safety of the facility, and confined plaintiff to administrative segregation.  Dkt. No. 46-14 ¶ 30; Dkt. No. 46-10 ("Miller Decl.") ¶ 6.

On February 23, 2015, plaintiff received a misbehavior report charging him with harassment and refusing a direct order.  Dkt. No. 46-14 ¶ 21; Dkt. No. 46-6 at 8.  A disciplinary hearing was held, and a hearing officer found plaintiff guilty of all charges and sentenced him to thirty days of keeplock, and thirty days loss of package, commissary, and phone privileges.  Dkt. No. 46-14 ¶ 22; Pl. Dep. at 126-27; Dkt. No. 46-6 at 2-5; Dkt. No. 46-7.

While in administrative segregation, Great Meadows officials conducted periodic reviews to determine whether plaintiff remained a security risk.  Dkt. No. 46-14 ¶ 37; Miller Decl. ¶¶ 7-11; Dkt. No. 46-12; Dkt. No. 46-13.  On March 20, 2015, a three-member committee conducted a sixty-day review of plaintiff's administrative segregation.  Dkt. No. 46-14 ¶¶ 38-39; Dkt. No. 46-12.  The committee, which consisted of the deputy superintendent for security, a security supervisor, and the offender rehabilitation coordinator, analyzed plaintiff's institutional record and recommended that his

5

administrative segregation continue.  Id.  In addition to plaintiff's history of disruptive behavior in both county and DOCCS facilities, the committee noted his history of bail jumping and the disciplinary sanctions incurred on February 23, 2015.  Dkt. No. 46-14 ¶ 40; Dkt. No. 46-6 at 2-8; Dkt. No. 46-12.  Supt. Miller affirmed the committee's decision. Dkt. No. 46-14 ¶ 41; Miller Dec. ¶¶ 8-9.  On May 20, 2015, the committee conducted a second sixty-day review of plaintiff's administrative segregation.   Dkt. No. 46-14 ¶ 44; Miller Decl. ¶ 10; Dkt. No. 46-13.   The committee recommended that plaintiff's administrative segregation be continued based on his history of disruptive behavior and bail jumping, as well as the February 23, 2015 incident.  Dkt. No. 46-14 ¶ 45; Dkt. No. 46-13.  Although plaintiff had not received a misbehavior report during that sixty-day period, Supt. Miller affirmed the committee's decision, citing that he remained extremely concerned by plaintiff's past behavior.  Dkt. No. 46-14 ¶¶ 46, 47; Miller Decl. ¶ 11.

In May 2015, a jury in Warren County Court found plaintiff guilty of criminal possession of a controlled substance in the seventh degree.  Dkt. No. 46-14 ¶ 51; Pl. Dep. at 26-28.  Plaintiff was sentenced to one year in jail.  Id.  Plaintiff remained at Great Meadow awaiting trial on assault charges.  Dkt. No. 46-14 ¶ 52; Pl. Dep. at 26, 28.  In August 2015, plaintiff pleaded guilty to assault in the third degree with intent to cause physical injury in satisfaction of the charges against him arising from the incident at Warren County Jail.  Dkt. No. 46-14 ¶ 53; Pl. Dep. at 17-18, 102; Dkt. No. 46-9.  Plaintiff was sentenced to one year in jail, but had already served that time.  Dkt. No. 46-14 ¶ 53; Pl. Dep. at 19, 102-03; Dkt. No. 46-9.  On August 10, 2015, plaintiff was released from Great Meadow.  Dkt. No. 46-14 ¶ 54; Pl. Dep. at 100-01; Miller Decl. ¶ 12.

At Great Meadows, plaintiff received daily exercise and three meals per day.  Dkt. No. 46-14 ¶ 18; Pl. Dep. at 130.  Plaintiff also visited with family members and his lawyer in preparation for criminal trials, and was permitted access to legal research materials. Dkt. No. 46-14 ¶¶ 19, 20; Pl. Dep. at 130, 134; Dkt. No. 46-6 at 8.

## II. Discussion[3]

Plaintiff contends that Supt. Miller violated his constitutional rights by confining him in administrative segregation for eight months without due process.  See generally Am. Compl.  Supt. Miller argues that (1) plaintiff has failed to state a procedural due process claim regarding his initial placement in administrative segregation and his continued confinement; (2) to the extent that plaintiff sets forth a substantive due process claim, it must be dismissed; and (3) he is entitled to qualified immunity.  See Dkt. No. 46-16 ("Def. Mem. of Law").

### A. Legal Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,"

---

[3] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

which support the motion.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).  A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material fact.  See id.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se

8

> submissions claims that are not "consistent" with the <u>pro se</u>
> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not "excuse
> frivolous or vexatious filings by <u>pro se</u> litigants," . . . and that
> <u>pro se</u> status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law . . . .

<u>Id.</u> (citations and footnote omitted); <u>see also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d

185, 191-92 (2d Cir. 2008).

## B. Fourteenth Amendment

### 1. Procedural Due Process

Plaintiff alleges that Supt. Miller violated his due process rights by "wrongfully

restrict[ing him] to [his] cell in SHU for 26 days before notice of recommendation and

without a hearing or procedural protections."  Am. Compl. at 4.  Plaintiff further contends

that the periodic reviews of his administrative confinement were "without substance" and

"nothing but a 'hollow formality' in violation of the Fourteenth Amendment." <u>Id.</u> Supt. Miller

argues that "this Court has already determined that Plaintiff failed to state a due process

claim concerning his initial placement in administrative segregation."   Def. Mem. of Law

at 16.   Further, Supt. Miller declares that the evaluations recommending plaintiff's

continued confinement in administrative segregation were justified.  <u>Id.</u>

The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall

. . . deprive any person of life, liberty, or property without due process of law." U.S. CONST.

amend. XIV § 1.  To state a claim for procedural due process, there must first be a liberty

interest which requires protection.  <u>See generally</u> <u>Valmonte v. Bane</u>, 18 F.3d 992, 998 (2d

9

Cir. 1994) ("[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.") (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "Aside from any state policy or regulation, the force of the Due Process Clause itself protects pre-trial detainees from restrictive confinement." Shine v. Hofmnn, No. 06-CV-237, 2009 WL 2179969, at *5 (D. Vt. July 22, 2009) (citing Kentucky Dep't of Corr., 490 U.S. at 459-60). An individual generally has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 483-84 (1995). However, the Second Circuit has held that this standard only applies to convicted inmates, not pretrial detainees. See Iqbal v. Hasty, 490 F.3d 143, 163 (2d Cir. 2007) ("This Court has said that Sandin does not apply to pretrial detainees and that, accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process."), rev'd on other grounds sub nom. Ashcroft v. Iqbal, 556 U.S. 662 (2009). As a pretrial detainee, a plaintiff's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty[; thus,] restrictions on pretrial detainees . . . may not amount to punishment . . . ." Benjamin v. Fraser, 264 F.3d 175, 188 (2d Cir. 2001) (citations and internal quotation marks omitted).

In assessing whether a pre-trial detainee's administrative segregation confinement

violates the Due Process Clause, the Court may only evaluate whether a defendant's method in coming to his or her administrative segregation determination is sufficient. See Proctor v. LeClaire, 846 F.3d 597, 608 (2d Cir. 2017). Administrative segregation "is appropriate when necessary to incapacitate a detainee who 'represents a security threat' or to 'complet[e] . . . an investigation into misconduct," and "[s]o long as prison officials seek to achieve one or both of those goals, they have wide latitude in the procedures they deploy." Id. (quoting Hewitt v. Helms, 459 U.S. 460, 474 (1983)).

Prior to confining a pretrial detainee in administrative segregation, "prison officials must provide 'some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to [administrative segregation],' although not necessarily a full hearing." Proctor, 846 F.3d at 609 (quoting Hewitt, 459 U.S. at 476). "Once that has occurred, prison officials need only conduct 'an informal, nonadversary evidentiary review' of whether the confinement is justified." Id. (quoting Hewitt, 459 U.S. at 476). During this periodic review, prison officials must verify that the individual "remains a security risk." Id. (quoting Hewitt, 459 U.S. at 477 n.9). Such determination turns on the specific facts relating to a particular individual, as well as the prison official's knowledge of the prison's conditions and tensions. See Hameed v. Coughlin, 37 F. Supp. 2d 133, 138 (N.D.N.Y. 1999) (quoting Hewitt, 459 U.S. at 477 n.9). The periodic review guarantees that the "state's institutional interest justifying the deprivation of the confined [detainee's] liberty has not grown stale and that prison officials are not using [administrative segregation] as a pretext for indefinite confinement[.]" Proctor, 846 F.3d at 609 (internal quotation marks and citation omitted).

11

### a. Initial Administrative Segregation Determination

Supt. Miller argues that any dispute regarding plaintiff's initial placement in administrative segregation at Great Meadows has been resolved by the undersigned's February 28, 2017 Report-Recommendation and Order.  Def. Mem. of Law at 14 (citing Dkt. No. 31, adopted in full by Dkt. No. 33).  In opposition, plaintiff contends that his "liberty interest to be free from punishment or indefinite solitary confinement as a pretrial detainee was clearly established and clearly deprived without any due process at all."  Dkt. No. 51 at 10.  Specifically, plaintiff claims that the twenty-six days spent in SHU without notice of his administrative confinement violated his due process rights.  Id.

Supt. Miller is correct that in the February 28, 2017 Report-Recommendation and Order, the undersigned, citing documentation of plaintiff's "assaultive and disruptive behavior," determined that "there [was] no dispute that [plaintiff's] placement in the SHU at Great Meadow C.F. was administrative, rather than punitive" and that his "initial placement in administrative segregation [did] not trigger a protected liberty interest."  Dkt. No. 31 at 11, 12; Def. Mem. of Law at 14.  Moreover, the record demonstrates that Great Meadow staff provided plaintiff "'some notice of the charges against him and an opportunity to present his views.'"  Proctor, 846 F.3d at 609 (quoting Hewitt, 459 U.S. at 476).  As to notice, Supt. Miller proffered an Administrative Segregation Recommendation dated January 2, 2015 wherein non-party Sgt. C. Fraser recommends plaintiff's confinement based on his prior disciplinary history at Warren County Jail.  Dkt. No. 46-4 at 4.  As to opportunity to be heard, it is clear that plaintiff received an administrative segregation hearing as both he and Supt. Miller have proffered the Administrative Segregation Hearing Determination dated

12

January 20, 2015. See id. at 2-3; Dkt. No. 51-1 at 68-69. The transcript of that hearing establishes that not only was plaintiff present and an active participant in that hearing, but that when plaintiff indicated that he had not received certain documentation which he felt was necessary to defend his release to general population, the hearing office adjourned the hearing to provide plaintiff with those documents. See Dkt. No. 46-5 at 3-7. Additionally, the hearing officer provided plaintiff the opportunity to ask Sgt. Fraser questions. See id. at 5-7. Thus, as this Court has already determined, plaintiff's initial placement in administrative segregation does not implicate a protected liberty interest. Dkt. No. 31, adopted by Dkt. No. 33.

Insofar as plaintiff argues that Supt. Miller violated his due process rights by failing to conduct the initial hearing within fourteen days of his confinement in administrative segregation pursuant to N.Y. COMP. CODES R. & REG. tit. 7, §§ 254.6, 301.4(a), Am. Compl. at 4; Dkt. No. 51-1 at 72, "a violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983." Burroughs v. Petrone, 138 F. Supp. 3d 182, 219 (N.D.N.Y. 2015) (quoting Cusamano v. Sobek, 604 F. Supp. 2d 416, 482 (N.D.N.Y. 2009) (internal quotation marks omitted)). Therefore, plaintiff's initial placement in administration segregation in insufficient to support a constitutional violation.

### b. Periodic Administrative Segregation Review

Assuming that plaintiff has established a liberty interest in his extended confinement in administrative segregation, plaintiff claims that Supt. Miller denied him meaningful periodic reviews of his administrative segregation confinement in violation of the Fourteenth

13

Amendment.  See Am. Compl. at 4; Dkt. No. 51-1 at 75-76.  Supt. Miller argues that "the periodic reviews of plaintiff's administrative segregation status satisfied due process as a matter of law."  Def. Mem. of Law at 14.  Periodic reviews of administrative segregation are "flexible and may be based on 'a wide range of administrative considerations,' including but not limited to observations of the inmate in [administrative segregation], 'general knowledge of prison conditions,' misconduct charges, ongoing tensions in the prison, and any ongoing investigations."  Proctor, 846 F.3d at 609 (quoting Hewitt, 459 U.S. at 477 n.9).  The prison official's final determination may be based on "purely subjective evaluations and on predictions of future behavior."  Id. (quoting Hewitt, 459 U.S. at 474 (internal quotation marks omitted).

Nevertheless, it is well-settled that wherever constitutionally mandated, due process must be meaningful – i.e., "[i]t must be granted at a meaningful time and in a meaningful manner."  Proctor, 846 F.3d at 609 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965) (internal quotation marks omitted)).  In determining what constitutes meaningful process, courts may weigh the government's interest in recommending an individual's segregated confinement against the private interest of the individual.  See id. at 609-10 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

The Second Circuit has stated that

> The state's interest in flexible [administrative segregation] review procedures — maintaining institutional security — is substantial. Institutional safety and security are perhaps a prison facility's most important considerations.  Courts must preserve prison officials' free[dom] to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape.  Prison administrators therefore should be accorded wide-ranging deference in the adoption and

> execution of policies and practices that in their judgment are
> needed to preserve internal order and discipline and to
> maintain institutional security.

<u>Proctor</u>, 846 F.3d at 610 (internal quotation marks and citation omitted).  Nevertheless, this

public interest must be weighed against the individual's private interest "implicated by an

extended and indefinite stay in [administrative segregation]."  <u>Id.</u>

Therefore, in this Circuit, a meaningful periodic review must fulfill a three-step

process:

> First, the reviewing prison officials must actually evaluate
> whether the inmate's continued [administrative segregation]
> confinement is justified.  It is not sufficient for officials to go
> through the motions of nominally conducting a review meeting
> when they have developed a pre-review conclusion that the
> inmate will be confined in [administrative segregation] no
> matter what the evidence shows.  Review with a pre-ordained
> outcome is tantamount to no review at all.
>
> Second, the reviewing officials must evaluate whether the
> justification for [administrative segregation] exists at the time of
> the review or will exist in the future, and consider new relevant
> evidence as it becomes available.
>
> Third and finally, the reviewing officials must maintain
> institutional safety and security (or another valid administrative
> justification) as their guiding principles throughout an inmate's
> [administrative segregation] term.  SHU confinement that
> began for proper [administrative segregation] purposes may not
> morph into confinement that persists for improper purposes.

<u>Proctor</u>, 846 F.3d at 610-11 (internal citations omitted).

The undersigned finds that the periodic reviews of plaintiff's administrative

confinement satisfied the due process requirements set forth in <u>Proctor</u>.  On March 20,

2015, a three-member committee consisting of the deputy superintendent for security, a

security supervisor, and the offender rehabilitation coordinator issued a recommendation

as to plaintiff's continued administrative segregation.  See Miller Decl. ¶ 7; Dkt. No. 46-12 at 1.  As to the initial justification for plaintiff's administrative segregation and his behavior, the committee considered plaintiff's "extensive history of disruptive behavior with both staff and inmates in county facilities and within DOCCS," as well as plaintiff's "history of bail jumping, which involved fleeing to the state of Pennsylvania on one occasion and fleeing to the state of Nevada on another occasion."  Dkt. No. 46-12 at 1.  As to whether justification existed at the time of the review, the committee noted that on February 23, 2015, plaintiff received a Tier II misbehavior report for harassment and failure to obey a direct order.  Id.  They also acknowledged that plaintiff maintained his cell and person, and was "usually appropriate" when interacting with staff.  Id.  The committee recommended that plaintiff remain in administrative segregation.  Id.  On the basis of the committee's report, and in conjunction with his thirty-one years of corrections experience, Supt. Miller determined that plaintiff's administrative segregation should be continued.  Miller Decl. ¶¶ 1, 8.  On May 20, 2015, the committee conducted a second periodic review of plaintiff's administrative segregation that largely mirrored the first, with the added notation that plaintiff had "no further disciplinary incidents since his last review."  Dkt. No. 46-13 at 1. Based on the committee's recommendation, Supt. Miller continued plaintiff's confinement. Miller Decl. ¶¶ 10, 11.

Plaintiff's claims that the periodic reviews were "without substance" and "nothing but a 'hollow formality'" are not supported by the record.  See Am. Compl. at 4.  At the outset, it is clear that the March 20, 2015 and May 20, 2015 reviews complied with minimum due process required by the Constitution — "'an informal, nonadversary evidentiary review' of

16

whether the confinement is justified."  Proctor, 846 F.3d at 609 (quoting Hewitt, 459 U.S. at 476).  As to whether these reviews were meaningful, although the undersigned acknowledges that plaintiff, as a pretrial detainee, has a significant interest in freedom from segregated confinement, see Benjamin, 264 F.3d at 188, the state's interest in maintaining the safety and security of the prison facility is evident as the basis for plaintiff's continued status in administrative segregation.  See Proctor, 846 F.3d at 609-10 (quoting Mathews, 424 U.S. at 335 ("Guiding that analysis are the three Mathews factors — the government's interest in limited fiscal and administrative burdens, the private interest in freedom from restraint, and 'the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards.")).

As to the March 2015 review, Supt. Miller declared that, in continuing plaintiff's administrative segregation, his "paramount concern in [recommending continued segregation] was the safe, secure operation of the prison and whether [plaintiff] presented an immediate threat . . . if he was released . . . to the general population."  Miller Decl. ¶ 8.  Supt. Miller further declared that plaintiff's "history of assaultive and disruptive behavior while in county custody coupled with the misbehavior report he received while in administrative segregation led [him] to conclude that his disruptive and assaultive behavior would likely continue if release to general population."  Id. ¶ 9.  As to the May 2015 review, Supt. Miller declared that "[a]lthough [plaintiff] had not received a misbehavior report since his previous sixty-day review, [he] remained extremely concerned by his recent behavior at the Warren County Jail, which had resulted in nearly 200 unusual incident reports in only

a matter of months."  Miller Decl. ¶ 11.  Supt. Miller further declared that "even with the added security of administrative confinement at Great Meadow, [plaintiff] had exhibited harassing behavior toward staff."  Id.  Supt. Miller appropriately weighed plaintiff's history of "assaultive and disruptive behavior" in conjunction with his concern that, even within the confines of administrative segregation, plaintiff still acquired a misbehavior report, and determined that plaintiff be confined.  See id. ¶¶ 8-11.  Thus, it is clear that the safety and security of the facility was Supt. Miller's "guiding principle" in plaintiff's continued confinement.  Proctor, 846 F.3d at 610-11.

Moreover, plaintiff has not proffered any evidence, other than conclusory allegations,[4] that Supt. Miller sought to punish plaintiff through indefinite confinement or developed an improper motivation for plaintiff's continued confinement.  See Proctor, 846 F.3d at 610-11 ("SHU confinement that began for proper [administrative segregation] purposes may not morph into confinement that persists for improper purposes.").

To the extent that plaintiff's continued confinement could be considered punitive based on Supt. Miller's reliance on the February 2015 misbehavior report, the record

---

[4] In his opposition papers, plaintiff suggests that Supt. Miller "was part of the plot to keep [him] in SHU" and "orchestrated or allowed an illegal pretexual plot to keep [him] in administrative segregation as punishment [disguised] in administrative management of the safety and security of the facility."  Dkt. No. 51 at 14, 15.  To the extent that plaintiff now seeks to allege a conspiracy claim against Supt. Miller, it must be denied as "it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." Thomas v. Egan, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) (citing Beckman v. United States Postal Serv., 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000)); see Jones v. Goord, 435 F. Supp. 2d 221, 261 (S.D.N.Y. 2006) (same).  Nevertheless, plaintiff's conclusory allegations against Supt. Miller fail to establish a prima facie conspiracy claim — i.e., "an agreement between two or more defendants to act in concert to inflict an unconstitutional injury, and an overt act done in furtherance of that goal causing damages." McCloud v. Prack, 55 F. Supp. 3d 478, 482 (W.D.N.Y. 2014) (citation omitted).  There is no indication in the record that Supt. Miller agreed to act in concert with any Great Meadow staff member to confine plaintiff.  As "[c]onclusory allegations of a conspiracy will not suffice," id., plaintiff fails to set forth a conspiracy claim.

indicates that plaintiff received the heightened due process required by Wolff v. McDonnell. See, e.g., Shine, 2009 WL 2179969, at *5 (finding that the defendant's decision to continue the plaintiff's, a pretrial detainee, confinement based on disciplinary violations could be deemed punitive); see also Benjamin, 264 F.3d at 190 ("[T]he procedures required by Wolff apply if the restraint on liberty is imposed [to pretrial detainees] for disciplinary reasons."). Courts in this Circuit state that, with respect to pretrial detainees, if "a purportedly administrative restraint . . . is found to be tantamount to punishment," the due process standard governed by "Wolff [ ], which requires written notice of the charges at least twenty-four hour before any hearing, a written statement of factual allegations against the inmate, and at least a limited ability to present witnesses and evidence," applies. Taylor v. Santana, No. 05 Civ. 1860 (AKH), 2007 WL 737485, at *4 (S.D.N.Y. Mar. 6, 2007) (citing Benjamin, 264 F.3d at 190). On February 24, 2015, plaintiff received a misbehavior report charging him with harassment (107.11) and refusing a direct order (106.10). Dkt. No. 46-6 at 8. On February 25, 2015, a hearing officer commenced a Tier II disciplinary hearing, and sentenced plaintiff to thirty days keeplock and thirty days loss of packages, commissary, and phone privileges. Dkt. No. 46-7 at 3. Although plaintiff refused to attend the hearing, the hearing officer provided plaintiff with a written disposition outlining the evidence relied upon and his reasoning. See Dkt. No. 46-6 at 3-7. There is no indication that plaintiff was prevented from attending the hearing, and he testified that he voluntarily refused to attend. See Pl. Dep. at 124. The undersigned finds that, insofar as Supt. Miller relied on plaintiff's disciplinary infraction in continuing his administrative confinement, it is clear that plaintiff received heightened due process standards. See Ramsey v. Squires,  879 F. Supp. 270,

293 (W.D.N.Y. 1995) ("Because the record clearly shows that plaintiff got a Wolff hearing on June 7th in connection with the threatening charge and was found guilty, it is clear that continued administrative confinement in view of his pattern of behavior was supported by due process[.]").   Therefore, plaintiff received meaningful periodic reviews of his administrative segregation status.

Insofar as plaintiff contends that Supt. Miller's failure to conduct a third sixty-day administrative segregation review in July 2015 constitutes a denial of due process, this argument is misplaced.  As Supt. Miller has indicated, "an inadvertent denial of a periodic review does not give rise to a due process violation."  Proctor v. Kelly, No. 9:05-CV-0692 (GTS/GJD), 2008 WL 5243925, at *7 (N.D.N.Y. Dec. 17, 2008) (hereinafter Proctor II). Further, "a violation of a state law or regulation, in and of itself, does not give rise to liability under 42 U.S.C. § 1983."  Burroughs, 138 F. Supp. 3d at 219.  There is no indication in the record that Supt. Miller or the review committee deliberately denied plaintiff his July 2015 review or attempted to punish him by keeping him administratively confined.

Accordingly, plaintiff fails to establish that Supt. Miller denied him meaningful periodic reviews in violation of the Fourteenth Amendment.

### c. Some Evidence

To the extent that plaintiff contends that both the initial administrative segregation placement and the subsequent periodic reviews were not supported by sufficient evidence, the record suggests otherwise.  Due process mandates that a hearing determination be supported by "some evidence."  Edmonson v. Coughlin, 21 F. Supp. 2d 242, 251 (W.D.N.Y.

1998) (quoting Sup't Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985)); see Milner v. Lewis, No. 3:14-CV-1544(VLB), 2017 WL 1024268, at *9 (D. Conn. Mar. 16, 2017) (same)). "Ascertaining whether [the some evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56.  Courts in this Circuit have applied the "some evidence" standard to the decision to place an inmate in administrative segregation.  Milner, 2017 WL 1024268, at *9 (citing Taylor v. Rodriguez, 238 F.3d 188, 194 (2d Cir. 2001) (applying the "some evidence" standard to an officer's decision to place an inmate in "close custody."); Davis v. Barrett, No. 02-CV-0545 SR, 2011 WL 2421109, at *3 (W.D.N.Y. June 13, 2011) ("In accordance with the standards for such a hearing, the Court must find "some evidence" in the record that could support the hearing officer's conclusion that placement in administrative segregation was warranted.") (citation omitted)).

The record establishes that, in making his initial administrative segregation recommendation, Sgt. Fraser relied on plaintiff's "assaultive and disruptive behavior" at Warren County Jail, including "199 Unusual Incident Reports, 63 disciplinary hearings that [had] been conducted for various rule violations, with several additional misbehavior reports awaiting disposition," as well as plaintiff's exposure of staff to fecal matter and urine, his "refusal to comply with strip frisk/search procedures," his destruction of "copious amounts of property and [attempts] to retain the broken or shattered portions in his cell," and his attempts to spit on staff. Dkt. No. 46-4.  Nonparty hearing Officer Acting Captain Lieutenant

Birrell relied on Sgt. Fraser's recommendation in assigning plaintiff to administrative segregation, and acknowledged such at the January 2015 hearing and in the written disposition. See Dkt. Nos. 46-4 at 2, 46-5. The review committee also referenced these incidents in the March 2015 and May 2015 periodic reviews, and Supt. Miller declared that he remained concerned by these incidents when approving the continuation of plaintiff's confinement. See Miller Decl. ¶ 11; Dkt. Nos. 12, 13. Thus, the record indicates that the initial January 2015 administrative segregation placement and the subsequent March 2015 and May 2015 periodic reviews were supported by sufficient evidence to support plaintiff's confinement.

Insofar as plaintiff argues that the underlying disciplinary charges at Warren County Jail were fabricated or exaggerated, see Dkt. Nos. 51 at 13-14, 51-1 at 75, in assessing whether administrative segregation was proper, a court is not permitted to reevaluate the evidence that was before the Great Meadows staff and supersede their original determination; instead, the undersigned may only evaluate whether the defendant's method in coming to his administrative segregation determination is sufficient. See Proctor, 846 F.3d at 608. As the record demonstrates that Supt. Miller based his determination on the plaintiff's institutional record from the Warren County Jail, see generally Miller Decl., the undersigned finds Supt. Miller's methodology sufficient, and it is recommended that defendant's Motion for Summary judgment be granted.

## 2. Substantive Due Process

Supt. Miller argues that to the extent that plaintiff asserts a substantive due process

claim, that claim must be dismissed.  Def. Mem. of Law at 17.  In opposition, plaintiff contends that his placement in administrative segregation was "an abuse of discretion" depriving him of his "fundamental right to be free from punishment as a pretrial detainee and right to be free from indefinitely administrative segregation without due process."  Dkt. No. 51-1 at 76, 77.

"Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.'"  Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir.1994) (internal citations omitted).  "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  Okin v. Village of Cornwall-On-Hudson Police Dep't, 577 F.3d 415, 431 (2d Cir. 2009) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).  As already observed by this Court, "[v]ery few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process.  In Sandin v. Conner, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs."  Samms v. Fischer, No. 10-CV-349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar. 25, 2011) (citations omitted).

In the context of pretrial detainees, "the Supreme Court has held that because '[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime,' the Due Process clause of the Fourteenth Amendment dictates that he or she may not be punished in any manner — neither cruelly and unusually nor otherwise."  Allah v. Milling,

23

982 F. Supp. 2d 172, 179 (D. Conn. 2013) (quoting Bell v. Wolfish, 441 U.S. 520, 536-37 (1979)).  Where a defendant does not verbally express punitive intent, such intent may be established through the conditions of confinement or restraint.  Id. (quoting Turkmen v. Aschroft, 915 F. Supp. 2d 314, 338 (E.D.N.Y. 2013).  "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"  Bell, 441 U.S. at 538.  It is well-settled that maintaining security and order within a prison facility justifies "restrictive conditions of confinement on pretrial detainees."  Allah, 982 F. Supp. 2d at 179 (citing Bell, 441 U.S. at 540).

Aside from plaintiff's conclusory allegations, the record does not demonstrate that Supt. Miller maintained the requisite punitive intent in recommending plaintiff's continued confinement.  See subsection II.B supra, at 8-21.  At the initial determination and during the periodic review, the decisionmaker made clear the basis for plaintiff's administrative confinement: his past assaultive and disruptive behavior at Warren County Jail resulting in nearly 200 Unusual Incident Reports.  See Dkt. Nos. 46-4 at 2, 46-5 at 8, 46-12, 46-13.  In affirming those decisions, Supt. Miller not only referenced plaintiff's past behavior, but also considered plaintiff's recent disciplinary actions, and the concern that, even with additional security measures, plaintiff still exhibited "harassing behavior."  Miller Decl. ¶¶ 8, 9, 11. Supt. Miller declared that based on past behavior and the likelihood that such behavior would be repeated, he "determined that [plaintiff] still presented a current threat to the safe, secure operation of the prison."  Id. ¶ 11.  Without more, Supt. Miller's actions do not amount to punishment in violation of the Fourteenth Amendment.  See Bell, 441 U.S. at

24

538.

Moreover, plaintiff's conditions of segregated confinement were not so egregious or outrageous to shock the "contemporary conscience" in violation of the Fourteenth Amendment.  See Okin, 577 F.3d at 431.  As Supt. Miller notes, plaintiff received three meals a day, daily exercise, legal research materials, and visits from his family members and attorney.  Def. Mem. of Law at 18 (citing Pl. Dep. at 129, 130, 134).  There is no indication that plaintiff suffered inhumane conditions during his time in segregated confinement.  See Petrucelli v. Hasty, 605 F. Supp. 2d 410, 429 ("Although a detainee has an understandable desire to be as comfortable as possible during his confinement, this desire to be free from discomfort simply does not rise to the level of a fundamental liberty interest.  A pretrial detainee's right to be free from punishment prior to an adjudication of guilt in accordance with the due process of law does not preclude prison officials from imposing significant restrictions.") (citation omitted).  Therefore, as it is clear that plaintiff's past behavior at Warren County Jail and threat to the safety and security of Great Meadow resulted in the segregated confinement determination, it cannot be said that such confinement was arbitrary or conscious-shocking in violation of the Fourteenth Amendment. See Proctor II, 2008 WL 5243925, at *6 ("With [p]laintiff having thus created a threat to the security of the prison by his conduct over the years, his subsequent administrative confinement resulting from the December 2003 proceeding was not arbitrary or conscience-shocking in the constitutional sense.") (internal quotation marks and citation omitted).  Accordingly, it is recommended that Supt. Miller's Motion for Summary Judgment on this ground be granted.

### C. Qualified Immunity

Supt. Miller argues that he is entitled to qualified immunity as (1) plaintiff's constitutional rights were not violation, and (2) it was "objectively reasonably for an official in his position to believe that his conduct did not violate [p]laintiff's rights."  Def. Mem. of Law at 19.   Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified  . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights."  Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation.  See Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test.  See subsection II.B.1, 2. supra.  Because there is no

constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation.  See Aiken, 236 F. Supp. 2d at 230.


### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 46) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 18) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[5]

---

[5] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).

Dated: May 24, 2018
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge